**MADAR LAW CORPORATION**
Alex S. Madar, Esq. (SBN: 319745)
alex@madarlaw.net
11510 Eaglesview Ct.
San Diego, CA 92127
Telephone: (858) 299-5879
Facsimile: (619) 354-7281

*Attorneys for Plaintiff,*
Michael Cribier

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL CRIBIER, individually and on behalf of all others similarly situated, | Case No.: |
| Plaintiff, | **CLASS ACTION COMPLAINT** |
| vs. | **VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT OF 1991, 47 U.S.C §§ 227, *ET SEQ.*** |
| COMPASS, INC., | |
| Defendant. | **DEMAND FOR JURY TRIAL** |

Plaintiff MICHAEL CRIBIER ("Plaintiff"), individually and on behalf of the proposed Class defined below, brings the following class action complaint against Compass, Inc., and DOES 1-100 (collectively "Defendant").   Plaintiff alleges as follows:

## INTRODUCTION

1.    Defendant operates the largest independent real-estate brokerage in the United States, with over 300 offices nationwide and more than 28,000 real estate

agents.[1]

2.     Defendant contracts with tens of thousands of real estate agents across the country (collectively, the "Agents" or "Compass Agents"), who drive business for Defendant by identifying leads and turning those leads into home sales under the Compass brand name.

3.     One way the Compass Agents drive home sales for Defendant is to "cold call" or "cold text" residential and cellular telephone numbers directly to market their real estate services and the Compass brand to the call and/or text recipients.

4.     Defendant not only authorizes and ratifies the Agents' practice of cold calling or cold texting residential and cellular telephone numbers directly to market Defendant's real estate services - it also welcomes the financial benefits of the increased home sales that the cold calls and texts generate.

5.     In its zeal to find clients and get more commissions, the Defendant has failed to take sufficient precautions to ensure its Agents do not engage in harassing telephone practices.

6.     In particular, Defendant has failed to adopt sufficient procedures to ensure their Agents do not call potential customers who are not on the National Do Not Call Registry ("NDNCR").  This practice violates the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA"), and its implementing regulations.

7.     To increase their revenues, Defendant encourage and permit their Agents to partner with various autodialing and auto-texting companies and platforms, which in turn provide the Agents with the capacity to harass a larger number of people with unwanted calls and texts.

8.     The Compass Agents make these cold calls and texts on behalf of and as agents of Defendant for reasons including but not limited to the following:

a.     Defendant profits from every home sale made by each Compass

---

[1] https://www.compass.com/about (last accessed March 24, 2025)

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Agent and has a financial interest in ensuring the Agents can market themselves widely and quickly.

    b.    It is Defendant that designs the Compass Agents' cold calling/texting policies and oversees Agent training, and it has either neglected to design, or designed and weakly implemented an insufficient process for "compliance" with the TCPA, which it knows the Agents fail to follow. In the event a TCPA compliance process was put in place, Defendant has authorized and ratified the Agents' failure to follow the TCPA "compliance" process Defendant designed.

    c.    Defendant knows of, approves, and ratifies the Agents' conduct in connection with making the cold calls and texts at issue, including the following: (1) the Agents' use of Defendant's intellectual property, such as the "Compass", or "Urban Compass" brand names; and (2) the Agents' use of texting and cold-calling platforms to make the calls and texts.

9.    Plaintiff and thousands of people nationwide are victims of Defendant's reckless cold calling and texting practices. They received numerous unwanted marketing calls and texts that were for the purpose of advertising the Defendant's Compass real estate business. These calls and texts were placed without regard to anyone's status on the NDNCR and without regard to prior complaints made to Defendant.

10.    Because Defendant engages in and profits from pervasive cold calling and texting that results in violations of the TCPA, Plaintiff brings this class action complaint for damages, restitution, injunctive relief, and any other available legal or equitable remedies, resulting from Defendant's unlawful calls to their residential and mobile telephone lines, in violation of the TCPA.

**JURISDICTION AND VENUE**

11.     This Court has federal question subject matter jurisdiction over this class action lawsuit pursuant to 28 U.S.C. § 1331 as Plaintiff alleges violations of a federal statute, the TCPA.

12.     The Court has personal jurisdiction over Defendant because Defendant conducts significant business in this District, and maintains its regional headquarters in San Francisco, CA, within this district.

13.     This Court has original jurisdiction over this class action pursuant to 28 U.S.C. § 1332(d) because Plaintiff and the members of the Class have suffered aggregate damages exceeding $5,000,000, exclusive of interests and costs, and this case is a class action in which a member of the Classes is a citizen of a state different from Defendant.

14.     Venue is proper in the United States District Court for the Northern District of California pursuant to 18 U.S.C. § 1391(b) because Defendant is subject to personal jurisdiction in the County of San Francisco, State of California as not only does Defendant regularly conduct business throughout the State of California, but Defendant maintains its regional headquarters in San Francisco, California.

**PARTIES**

15.     Plaintiff is, and at all times mentioned herein was, a citizen and resident of the State of California. Plaintiff is, and at all times mentioned herein was, a "person," as defined by 47 U.S.C. § 153(39).

**Defendant Compass, Inc.**

16.     Defendant Compass, Inc. ("Compass") claims to be "the largest residential real estate brokerage in the united States by sales volume."[2]

17.     Defendant Compass has its principal place of business and headquarters located at 110 fifth Avenue, 3rd Floor, New York, NY 10010.  Defendant Compass is,

---

[2] https://www.prnewswire.com/news-releases/compass-inc-reports-fourth-quarter-and-full-year-2024-results-302379341.html (last accessed March 25, 2025)

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

18.    Defendant Compass maintains regional headquarters located at 891 Beech St., San Francisco, CA 94109.  Defendant Compass is, and at all times mentioned herein was a "person," as defined by 47 U.S.C. § 153(39).

19.    Plaintiff alleges that at all times relevant herein Defendant Compass conducted business in the State of California and in the County of San Francisco, and within this judicial district.

## FACTUAL BACKGROUND

### A. Overview of the TCPA.

20.    In 1991, Congress enacted the TCPA to regulate the explosive growth of the telemarketing industry. In doing so, Congress recognized that "[u]nrestricted telemarketing … can be an intrusive invasion of privacy.…"  Telephone Consumer Protection Act of 1991, Pub. L. No. 102-243 § 2(5) (1991) (codified at 47 U.S.C. § 227).

21.    The TCPA was designed to prevent calls and messages like the one described within this complaint, and to protect the privacy of citizens like Plaintiff. "Voluminous consumer complaints about abuses of telephone technology – for example, computerized calls dispatched to private homes – prompted Congress to pass the TCPA." *Mims v. Arrow Fin. Servs., LLC*, 132 S. Ct. 740, 744 (2012).

22.    Specifically, the TCPA restricts telephone solicitations (*i.e.,* telemarketing) and the use of automated telephone equipment, as well as violations of the TCPA's National Do-Not-Call provision of 47 C.F.R. § 64.1200(c).[3]  The TCPA limits the use of automatic dialing systems, artificial or prerecorded voice messages, SMS text messages, and fax machines.  It also specifies several technical requirements

---

[3]    According to the Federal Communications Commission's website, https://www.fcc.gov/consumers/guides/wireless-phones-and-national-do-not-call-list, accessed on June 3, 2021: Placing telemarketing calls to wireless phones is - and always has been - illegal in most cases.

for fax machines, autodialers, and voice messaging systems–principally with provisions requiring identification and contact information of the entity using the device to be contained in the message.

23.    In 2003, the FCC promulgated regulationsthat created the National Do Not Call Registry. *See* 47 C.F.R. § 64.1200(c)(2). The NDNCR is a list containing the residential and cellular telephone numbers of individuals who affirmatively indicate they do not wish to receive unsolicited calls from commercial telemarketers. Do not call registrations must be honored indefinitely. *Id.*

24.    In addition to its broad prohibition on calls to any number listed on the NDNCR, the TCPA prohibits *any* telemarketing call "unless such [entity] has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of that [company]." §64.1200(d). The "minimum standards" for these procedures include training of personnel engaged in marketing on the existence and use of an internal do-not-call list, placing an individual's phone number on that internal do-not-call list, and honoring that request within no more than 30 days of its receipt. *Id.* An entity violates the TCPA if it initiates a phone call without having implemented the minimum procedures.

25.    Today, 230 million telephone numbers are on the National Do Not Call Registry.[4]

26.    Despite the widespread embrace of the NDNCR, companies like Defendant flagrantly ignore the Registry and invade the privacy of consumers with unwanted calls

27.    In enacting the TCPA, Congress intended to give consumers a choice as to how creditors and telemarketers may call them and made specific findings that "[t]echnologies that might allow consumers to avoid receiving such calls are not

---

[4]    Simon van Zuylen-Wood, *How Robo-callers Outwitted the Government and Completely Wrecked the Do Not Call List,* WASH POST (MAGAZINE), Jan. 11, 2018, *available at* https://www.washingtonpost.com/lifestyle/magazine/how-robo-call-moguls-outwitted-the-government-and-completely-wrecked-the-do-not-call-list/2018/01/09/52c769b6-df7a-11e7-bbd0-9dfb2e37492a_story.html (last accessed March 24, 2025).

universally available, are costly, are unlikely to be enforced, or place an inordinate burden on the consumer." TCPA, Pub.L. No. 102-243, § 11. Toward this end, Congress found that:

> Banning such automated or prerecorded telephone calls to the home, except when the receiving party consents to receiving the call or when such calls are necessary in an emergency situation affecting the health and safety of the consumer, is the only effective means of protecting telephone consumers from this nuisance and privacy invasion.

*Id*. at § 12; *see also, Martin v. Leading Edge Recovery Solutions, LLC*, 2012 WL 3292838, at *4 (N.D. Ill. Aug. 10, 2012) (citing Congressional finding on TCPA's purpose).

28.    Congress also specifically found that "the evidence presented to the Congress indicates that automated or prerecorded calls are a nuisance and an invasion of privacy, regardless of the type of call […]." *Id*. At §§ 12-13; *see also, Mims*, 132 S. Ct. at 744.

29.    As Judge Easterbrook of the Seventh Circuit explained in a TCPA case regarding calls to a non-debtor similar to this one:

> The Telephone Consumer Protection Act […] is well known for its provisions limiting junk-fax transmissions.  A less litigated part of the Act curtails the use of automated dialers and prerecorded messages to cell phones, whose subscribers often are billed by the minute as soon as the call is answered – and routing a call to voicemail counts as answering the call. An automated call to a landline phone can be an annoyance; an automated call to a cell phone adds expense to annoyance.

*Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638 (7th Cir. 2012).

30.    Text messages are calls and are subject to the TCPA.  *See, e.g.*, *Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 666 (2016); *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 954 (9th Cir. 2009).

31.    47 C.F.R. § 64.1200(a)(2) additionally states, with respect to advertisement and telemarketing calls—of which Defendant's texts to Plaintiff are—that "[n]o person or entity may . . . [i]nitiate or cause to be initiated, any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to any of the lines or telephone numbers described in paragraphs (a)(1)(i) through (iii) of this section, other than a call made with the prior express written consent of the called party …"

32.    47 C.F.R. § 64.1200(f)(8) defines "prior express written consent" as "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered."

33.    As of October 16, 2013, unless the recipient has given *prior express written consent*,[5] the TCPA and Federal Communications Commission ("FCC") rules under the TCPA generally:

- Prohibit solicitors from calling residences before 8 a.m. or after 9 p.m., local time.

- Require that solicitors provide their name, the name of the person or entity on whose behalf the call is being made, and a telephone number or address at which that person or entity may be contacted.

- Prohibit solicitations to residences that use an artificial voice or a recording.

---

[5] Prior express written consent means "an agreement, in writing, bearing the signature of the person called that clearly authorizes the seller to deliver or cause to be delivered to the person called advertisements or telemarketing messages using an automatic telephone dialing system or an artificial or prerecorded voice, and the telephone number to which the signatory authorizes such advertisements or telemarketing messages to be delivered." 47 C.F.R. § 64.1200(f)(8).

- Prohibit any call or text made using automated telephone equipment or an artificial or prerecorded voice to a wireless device or cellular telephone.

- Prohibit any call made using automated telephone equipment or an artificial or prerecorded voice to an emergency line (*e.g.*, "911"), a hospital emergency number, a physician's office, a hospital/health care facility/elderly room, a cellular telephone, or any service for which the recipient is charged for the call.

- Prohibit autodialed calls that engage two or more lines of a multi-line business.

- Prohibit unsolicited advertising faxes.

- Prohibit certain calls to members of the National Do-Not Call Registry.

34.     Furthermore, in 2008, the FCC held that "a creditor on whose behalf an autodialed or prerecorded message call is made to a wireless number bears the responsibility for any violation of the Commission's rules." *In re Rules and Regulations Implementing the Telephone Consumer Protection Act, Declaratory Ruling on Motion by ACA International for Reconsideration*, 23 FCC Rcd. 559, 565, ¶ 10 (Jan. 4, 2008); *Birchmeier v. Caribbean Cruise Line, Inc.*, 2012 WL 7062748 (N.D. Ill., Dec. 31, 2012).

35.     The TCPA also provides that liability should be imposed when calls are made on behalf of an entity or person. 47 U.S.C. § 227(c)(5). In its implementing regulations and interpretations, the FCC has determined that this statutory mandate is broad, and that vicarious liability applies where there is apparent authority, actual authority, ratification, or, under the express terms of § 227(c), when unlawful calls are placed "on behalf of" the seller. *In re Joint Pet. Filed by Dish Network*, 28 FCC Rcd. 6574 (2013).

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

36.     Accordingly, the entity can be liable under the TCPA for a call made on its behalf, even if the entity did not directly place the call. Under those circumstances, the entity is deemed to have initiated the call through the person or entity.

37.     With respect to misdialed or wrong-number calls, the FCC recently clarified that "callers who make calls without knowledge of reassignment and with a reasonable basis to believe that they have valid consent to make the call should be able to initiate one call after reassignment as an additional opportunity to gain actual or constructive knowledge of the reassignment and cease future calls to the new subscriber." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, FCC 15–72, 30 F.C.C.R. 7961, ¶¶ 71-72 (July 10, 2015). "If this one additional call does not yield actual knowledge of reassignment, we deem the caller to have constructive knowledge of such." *Id.* Thus, any second call placed to a wrong number violates the TCPA.

38.     The TCPA provides for damages in the amount of $500 for each negligent violation and $1,500 for each knowing violation. *See* 47 U.S.C. § 227(b)(3).

**B. Defendant has Executed a Nationwide Cold Calling Scheme That Has Unlawfully Harassed People Around the Country.**

**i.     Defendant Operate a Large Real Estate Conglomerate That Directs and Supervises Agents to Sell Real Estate Under Their Compass Brand on Their Behalf.**

39.     Defendant is one of North America's largest real estate conglomerates.

40.     As of March 24, 2025, Defendant represents that over 28,000 agents operate under the Compass umbrella.[6]

41.     Each Compass Agent affiliates with Defendant Compass and holds themself out as a real estate agent under the Compass brand. The Defendant allows each of the

---

[6] https://www.compass.com/about (last accessed March 24, 2025).

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Compass Agents to have a designated webpage that lists the Agent's contact information, short biography, and the homes for which they represent Compass. People interested in buying and selling homes in a specific geographic area can find a Compass Agent by searching the Compass website to help them do so. When a home is sold, the payment is received by Defendant; Defendant then pays the Agent a commission while Defendant also receive a portion of the profit.

42.    To become a Compass Agent and be able to help people buy and sell homes through the Compass brand, a person must first apply and be accepted for such a role by the Defendant. In other words, individuals cannot just simply decide to hold themselves out as being a Compass representative; instead, every Compass Agent has received an affirmative authorization from Defendant, to hold themselves out as such.

43.    Because homeowners typically only contract with one real estate brokerage to assist them in selling their homes, and competition in the real estate market is fierce, Defendant has an incentive to obtain as many home listings as possible to increase their profits.

44.    Moreover, if a real estate brokerage has a large share of the listings for homes for sale in a given geographic market at a given time, it can use its market power to raise the prices on the homes it has for sale, since fewer competing listings can undercut the real estate brokerage with lower home prices. Due to Defendant's large number of affiliated agents, they are able to capture large shares of the market in given regions, and they have tremendous incentive to obtain more and more home listings to be able to keep real estate prices high.

45.    The Compass Agents do not operate independently. Rather, each one operates in accordance with the Defendant's policies and procedures to ensure continuity in customer service, and to protect the reputation of the Compass brand, which, in turn, ensures more profits for Defendant.

### ii. Defendant Knows That the Compass Agents Engage in Cold Calling to Sell Real Estate on Their Behalf.

46.    Defendant knows that it is standard practice in the real estate field to use cold calling and telephone solicitation to generate new business, and they know and expect that their Compass Agents will employ these strategies when selling real estate on their behalf.

47.    As is typical to the industry and known to Defendant, Compass Agents often scan real estate listings that are from competitors, are for sale by owner ("FSBO"), or are expired to identify individuals who might be in the market for a new real estate agent, and they cold call these homeowners to try to convince them to retain the Agent to list the property.

48.    Compass Agents also prospect for potential home buyers or sellers by cold calling homeowners or renters in targeted geographic areas, including in the vicinity of existing listings, open houses, or recent sales. Defendant provides training on and gives Compass Agents access to various lead generation services which allows Compass Agents to download residents' contact information, including phone numbers, to make such geo-targeted cold calls.

49.    Compass Agents can also sign up for other services that provide them with leads and contact information. As is common to the industry, Compass Agents will mine other sources of information for potential home buyers' or sellers' phone numbers, for example, by forming relationships with third parties who supply the Compass Agents with phone numbers.

50.    Compass Agents, like others in the industry, also search for prospective homebuyers, often buying lists of prospective customers from real estate aggregator services, such zillow.com or realtor.com.

### iii. Defendant Knows, Ratifies, and Authorizes Their Agents to Use Autodialing Software to Dial Millions of Numbers.

51.     Because placing individual calls one by one often can be cumbersome and time consuming, those working to drive business in the real estate industry often use autodialer platforms.

52.     Autodialers provide software that permits businesses to: (1) increase the number of people they call in a given time period, and (2) deliver both prerecorded messages and text messages on a widespread basis to large numbers of recipients over the phone.

53.     By using autodialing, callers can reach far more people than they would if they were directly calling or texting.

54.     As a result, the use of autodialers is common in the real estate industry.

     **a.** **Defendant Knows, Ratifies, and Authorizes the Use of Autodialing Software by Compass Agents to Increase Their Profits.**

55.     Defendant knows, authorizes, and ratifies the Compass Agents' usage of autodialing systems and software.

56.     First, as set forth in Paragraphs 51-54, use of autodialers is common in the sales and real estate industries. Defendant, as leaders in the real estate field, are familiar with sales practices and this trend.

57.     Defendant promotes the use of autodialing platforms, and in fact have developed and utilize their own proprietary Real Estate Customer Relationship Management ("CRM"), which provides autodialing features.[7]

58.     Additionally, Defendant promote and provide online training programs to the Compass Agents, while knowing those training programs both encourage and instruct agents on the use of autodialers. Defendant know its agents attend these workshops, and Defendant suggests that Compass Agents attend.

---

[7] https://support.therealbrokerage.com/hc/en-us/articles/5600210539543-What-is-Lofty (Last accessed on June 10, 2024)

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

2

3

  **iv. Defendant Routinely Violates the TCPA with Harassing Phone calls to People on the National Do Not Call Registry**

4   59. Defendant's business practices violate the TCPA, as they cause people to

5 be called often repeatedly, notwithstanding the fact that their numbers are listed on the

6 National Do Not Call Registry ("NDNCR").

7   60. The FCC's regulations at 47 C.F.R. § 64.1200(c)(2) prohibits Defendant from

8 placing calls to numbers on the NDNCR, but Defendant does nothing to ensure that the

9 Compass Agents do not place any such calls. Defendant knows that their cold-calling

10 practices have caused and will cause unwanted calls to people on the NDNCR but allow

11 the calls to continue to increase their profits.

12   61. When Compass Agents place calls through an autodialer platform, including

13 but not limited to platforms created by, recommended by, and/or partnered with by

14 Defendant, Compass Agents call people on the NDNCR in violation of 47 U.S.C. §

15 64.1200(c)(2). Defendant does not vet lists provided to and used by Compass Agents to

16 dial by comparing them to the NDNCR.

17   62. Defendant has not taken adequate steps to prevent Compass Agents from

18 calling people on the NDNCR.  Defendant has not adopted sufficient written procedures,

19 training programs, or a process that they know will actually prevent Compass Agents from

20 calling numbers on the NDNCR.

21   63. Defendant's written procedures are inadequate and do not comply with 47

22 U.S.C. § 64.1200(c)(2)(i)(A).

23   64. Defendant's training is inadequate and does not comply with 47 U.S.C. §

24 64.1200(c)(2)(i)(B).

25   65. Defendant does not maintain and record a list of telephone numbers that their

26 Agents may not contact pursuant to 47 U.S.C. § 64.1200(c)(2)(i)(C).

27   66. Defendant does not use any process to prevent telephone solicitations of any

28 number on the NDNCR and does not maintain records documenting their process

pursuant to 47 U.S.C. § 64.1200(c)(2)(i)(D), or to the extent they attempt to use such processes, they remain out of compliance with NDNCR regulations.

### C. Plaintiff Michael Cribier's Experience

67.    Plaintiff Michael Cribier registered his cell phone number ending in 2907 on the National Do Not Call Registry on December 14, 2004.

68.    Mr. Cribier uses his cell phone number for personal use only - and did so at the time he was sent phone calls by Dominic Pacheco and Ramon Maldonado, Compass Agents working under the Compass brand. Despite this fact, Mr. Cribier was called multiple times by Dominic Pacheco and Ramon Maldonado to see if he was interested in engaging their services as listing agents.

69.    On or about March 11, 2025 at 8:50AM, Mr. Cribier received the **first** unwanted telemarketing call from Compass, through its agent Dominic Pacheco from telephone number (858) 252-7206.  As Mr. Cribier did not recognize the number calling him, he opted not to answer the call.

70.    On or about March 11, 2025 at 9:49AM, Mr. Cribier received the **second** unwanted telemarketing call from Compass, through its agent Ramon Maldonado from telephone number (619) 853-6918.  Once again, as Mr. Cribier did not recognize the number calling him, he opted not to answer the call.

71.     On or about March 12, 2025 at 12:37PM, Mr. Cribier received the **third** unwanted telemarketing call from Compass, through its agent Dominic Pacheco, again from telephone number (858) 252-7206.  As Mr. Cribier recognized the number calling him as one that had previously called him the day before, he opted to answer.

72.    (858) 252-7206 is a phone number produced by Compass' autodialing system, and is unique to calls placed by Dominic Pacheco.

73.    When Mr. Cribier answered the phone call, Dominic Pacheco introduced himself as a Compass real estate agent, confirmed that he had called Mr. Cribier the day

1    before, and attempted to solicit the listing of Mr. Cribier's home which Mr. Cribier had

2    recently taken off the real-estate market.

3        74.    During this call, Dominic Pacheco provided Mr. Cribier with the web

4    address    of    his    personal    webpage    on    Compass'    website    –

5    www.compass.com/agents/dominic-pacheco, as well as a contact phone number of

6    (619) 948-1291, and invited Mr. Cribier to visit the website and browse his previously

7    sold listings.

8        75.    After Mr. Pacheco had made his sales pitch, Mr. Cribier explicitly

9    requested that Dominic Pacheco no longer contact him and expressed that he was not

10   interested in Mr. Pacheco's or Compass' real estate services.

11       76.    On or about March 17, 2025 at 6:03PM, and despite having explicitly

12   requested not to be contacted by Compass, Mr. Cribier received the **fourth** unwanted

13   telemarketing call from Defendant, through its agent Ramon Maldonado, again from

14   telephone number (619) 853-6918.

15       77.    (619) 853-6918 is a phone number produced by Compass' autodialing

16   system, and is unique to calls placed by Ramon Maldonado.

17       78.    When Mr. Cribier answered the phone call, Ramon Maldonado introduced

18   himself as a Compass real estate agent and, just as Mr. Pacheco had done on March 12,

19   2025, Mr. Maldonado attempted to solicit the listing of Mr. Cribier's home.

20       79.    After Mr. Maldonado had made his sales pitch, Mr. Cribier explicitly

21   requested that Mr. Maldonado no longer contact him and expressed that he was not

22   interested in Mr. Maldonado's or Compass' real estate services.

23       80.    On or about March 17, 2025 at 6:13PM, and despite having explicitly

24   requested not to be contacted by Compass just minutes earlier, Mr. Cribier received the

25   **fifth** unwanted telemarketing call from Defendant, through its agent Ramon Maldonado,

26   this time from telephone number (619) 791-9226.

27       81.    Upon Mr. Cribier answering this call, Mr. Maldonado again solicited the

28   sales listing of Mr. Cribier's home, this time highlighting his photography skills, which he

1  insisted could help Mr. Cribier sell his home.  Mr. Cribier again ended this call by
2  repeating that he did not want to be contacted further by Compass or Mr. Pacheco.

3      82.    Dominic Pacheco and Ramon Maldonado worked as agents for Defendant
4  Compass at the time they made these calls to Mr. Cribier on behalf of Compass.

5      83.    All five (5) calls constituted telephone solicitations pursuant to 47 C.F.R.
6  § 64.1200(c), as they were an attempt to promote or sell Defendant's services.
7  Specifically, all five calls were made on behalf of Defendant and were intended to
8  solicit and secure the sales listing for Mr. Cribier's home, from which Defendant would
9  earn a percentage of the eventual sales commission.

10     84.    Mr. Cribier never gave Defendant nor any Compass Agent, including Dominic
11 Pacheco or Ramon Maldonado, consent to call or text him.

12     85.    Mr. Cribier did not have an established business relationship with either
13 Dominic Pacheco, Ramon Maldonado, or Compass during the time of the telephone
14 solicitations.

15     86.    The telephone number provided by Dominic Pacheco, (619) 948-1291, is
16 the same number that is listed as Dominic Pacheco's contact number on Compass'
17 website. [8]

18     87.    Dominic Pacheco is listed as a Compass Agent within Defendant's own
19 website, wherein he has a dedicated webpage with his contact information, lists of
20 affiliated real estate property listings, as well as thumbnails to various YouTube videos
21 which feature himself discussing his real estate business.[9]

22 /./.

23

24 /./.

25

26 /./.

27 _____

28 [8] https://www.compass.com/agents/dominic-pacheco (last accessed March 24, 2025)
   [9] Id.

COMPASS                                    Buy    Rent    Sell    Compass Exclusives ⌄    New Development ⌄    Agents ⌄



# Dominic Pacheco

REALTOR® | DRE# 02196058
dominic.pacheco@compass.com

M: 619-948-1291

[Work with Dominic Pacheco]

### Social Media

  **Dominic's Website**

in  **LinkedIn**

f  **Facebook**

⧉  **Instagram**

  **YouTube**
⧉ **Google Business**

### Client Testimonials

Scroll down for more

★★★★★

"Typically one expects salesmen to be

## About Dominic

I joined Compass at the La Jolla Location. I'm drawn to the independent and self-disciplinary nature of working as a Real Estate Agent. I value the ability to be genuine in how I carry myself, not only as a person but as an agent. I believe success in the business is directly tied to the service you provide to your clients and your market knowledge. My friends would describe me as genuine, funny, optimistic, and the hardest worker they know who will go the extra mile to help anyone out. In my free time, I love to spend time with my dog, work out, and golf.



88.     The first and most prominently displayed YouTube thumbnail is entitled "I made 4000 Cold Calls! Here's What Happened", and links to a six-minute video uploaded on February 28, 2024, wherein Dominic Pacheco boasts cold-calling over 4000 phone numbers from expired listings in a calendar month, despite the admitted overwhelmingly negative reactions received from the people he cold-called.[10]

89.     The originating telephone number of Ramon Maldonado's March 17 6:13PM phone call, (619) 791-9226, is the same number that is listed as Ramon Maldonado's contact number on Compass' website. [11]

---

[10] https://www.youtube.com/watch?v=zYVrKhiTs7w&t=161s (last accessed March 24, 2025)
[11] https://www.compass.com/agents/ramon-maldonado (last accessed March 24, 2025)

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

90.     Ramon Maldonado is listed as a Compass Agent within Defendant's own website, wherein he has a dedicated webpage with his contact information, lists of affiliated real estate property listings, as well as client testimonials.[12]

91.     Upon information and belief, Mr. Cribier's phone number was provided to both Dominic Pacheco and Ramon Maldonado by Defendant Compass from a list of recently expired listings in their geographic area, without regard to whether Mr. Cribier's phone number was on the National Do-Not-Call Registry.

## ARTICLE III STANDING

92.     Defendant sent multiple phone calls to Plaintiff's personal cellular telephone which was registered on the National Do-Not-Call Registry. Such unwanted phone calls from Defendant are a nuisance, an invasion of privacy, and wasted Plaintiff's time and enjoyment in the use of his personal cellular telephone. All three of these injuries are concrete and *de facto*.

93.     Furthermore, Plaintiff was distracted, inconvenienced, and annoyed by having to take time to answer each phone call and engage with an unwanted solicitor.

94.     All of these injuries are particularized and specific to Plaintiff, and will be the same or substantially similar injuries suffered by each member of the putative class.

95.     The above phone calls were linked to Defendant as they were sent on behalf of both Defendant and its agents Dominic Pacheco and Ramon Maldonado, who are the parties that attempted to solicit business from Plaintiff for theirs and Defendant's financial benefit.  These phone calls are the sole source of Plaintiff's and the Class's injuries. Therefore, Plaintiff has illustrated facts that show that his injuries are traceable to the conduct of Defendant.

96.     Plaintiff's Request for Relief includes a request for damages for each call

---

[12] Id.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

made by Defendant to cellular numbers on the National Do-Not Call Registry, as authorized by statute in 47 U.S.C. § 227, *et seq*.  The statutory damages were set by Congress and specifically redress the damages suffered by Plaintiff and the members of the putative class.

## CLASS ACTION ALLEGATIONS

97.    Plaintiff brings this action pursuant to Rule 23(b)(2) and/or Rule 23(b)(3) of the Federal Rules of Civil Procedure, individually and on behalf of the following class, of which Plaintiff is a member, which is defined as follows:

> **National Do-Not Call Nationwide Class**:
> All persons within the United States (1) registered on the National Do-Not-Call Registry for at least 30 days, (2) who received more than one phone call or text message (3) made or sent by or on behalf of Defendant, (4) for the purpose of promoting Defendant's goods or services, (5) within any twelve-month period, (6) within the four years prior to the filing of the Complaint.

98.    Excluded from the Class is Defendant, its officers and directors, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendant has or had a controlling interest.

99.    Plaintiff reserves the right to redefine the class and to add subclasses as appropriate based on discovery and specific theories of liability.

100.    Plaintiff and members of the Class were harmed by the acts of Defendant in at least the following ways: Defendant, either directly or through its agents, illegally contacted Plaintiff and the Class members via their telephones, whether cellular telephones or otherwise, for solicitation purposes, thereby invading the privacy of said Plaintiff and the Class members whose cellular telephone numbers were on the National Do-Not-Call Registry.  Plaintiff and the Class members were damaged thereby.

101.    <u>Numerosity</u>: Upon information and belief, the members of the classes are

so numerous that joinder of all of them is impracticable.

102.    The exact number of the members of the classes is unknown to Plaintiff at this time, and can (and will) be determined through appropriate discovery. However, given that, on information and belief, Defendant texted and called thousands of class members nationwide during the class period, it is reasonable to presume that the members of the Class are so numerous that joinder of all members is impracticable. The disposition of the claims in a class action will provide substantial benefits to the parties and the Court.

103.    <u>Ascertainability</u>: The members of the class are ascertainable because the class is defined by reference to objective criteria.

104.    In addition, the members of the class are identifiable in that, upon information and belief, their cellular telephone numbers, names and addresses can be identified in business records maintained by Defendant and by third parties.

105.    <u>Typicality</u>: As a person who received numerous telephone solicitations from Defendant within a 12-month period, who did not have an established business relationship or personal relationship with Defendant, and who did not provide Defendant prior express invitation or permission to receive telephone solicitations, Plaintiff is asserting claims that are typical of the Class.  Plaintiff will fairly and adequately represent and protect the interests of the Class in that Plaintiff has no interests antagonistic to any member of the Class.

106.    Plaintiff's claims are typical of the claims of the members of the class. Plaintiff has had to suffer the burden of receiving unwanted phone calls to his cellular telephone, despite his phone number having been registered on the National Do-Not Call Registry.  Thus, his injuries are typical to Class Members.

107.    Plaintiff's claims, and the claims of the members of the class, originate from the same conduct, practice and procedures on the part of Defendant.

108.    Plaintiff's claims are based on the same theories, as are the claims of the members of the class.

109. <u>Adequacy</u>: Plaintiff is qualified to, and will fairly and adequately protect the interests of the members of the class with whom he is similarly situated, as demonstrated herein. Plaintiff acknowledges that he has an obligation to make known to the Court any relationships, conflicts, or differences with any Class Member.

110. Plaintiff's interests in this matter are not directly or irrevocably antagonistic to the interests of the members of the class.

111. Plaintiff will vigorously pursue the claims of the members of the class.

112. Plaintiff has retained counsel experienced and competent in class action litigation. Plaintiff's attorneys, the proposed class counsel, are versed in the rules governing class action discovery, certification, and settlement. In addition, the proposed class counsel is experienced in handling claims involving consumer actions and violations of the TCPA.

113. Plaintiff's counsel will vigorously pursue this matter.

114. Plaintiff's counsel will assert, protect and otherwise represent the members of the class.

115. Plaintiff has incurred, and throughout the duration of this action, will continue to incur costs and attorneys' fees that have been, are, and will be, necessarily expended for the prosecution of this action for the substantial benefit of each Class Member.

116. <u>Predominance</u>: The questions of law and fact common to the members of the class predominate over questions that may affect individual members of the class. The elements of the legal claims brought by Plaintiff and Class Members are capable of proof at trial through evidence that is common to the Class rather than individual to its members.

117. <u>Commonality</u>: There are common questions of law and fact as to all members of the Class, including but not limited to the following:

a. What is Defendant's conduct, pattern, and practice as it pertains to delivering advertisement and telemarketing text messages and phone calls;

b. Whether, within the four years prior to the filing of this Complaint, Defendant or its agents sent more than one text message or phone call to the members of the Class whose telephone numbers were on the National Do-Not-Call Registry and who had neither an established business relationship nor personal relationship with Defendant;

c. Whether Defendant obtained prior express written consent to send the text messages or calls to Plaintiff or the Class members' telephones;

d. Whether Defendant's calls or texts were made for an emergency purpose;

e. Whether Defendant has established written procedures to comply with National Do Not Call Registry registrations;

f. Whether Defendant trains personnel on any procedures to comply with National Do Not Call Registry regulations;

g. Whether Defendant uses any process to prevent telephone solicitations of any number on the National Do Not Call Registry and maintaining records documenting the process;

h. Whether Defendant's conduct violated the TCPA, and availability of statutory penalties;

i. Whether Defendant maintains and records a list of telephone numbers that it may not contact;

j. Whether Plaintiff and the Class members were damaged thereby, and the extent of damages for such violation; and

k. Whether Defendant should be enjoined from engaging in such conduct in the future.

118. <u>Superiority</u>: A class action is superior to all other available methods for the fair and efficient adjudication of this matter because:

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

- If brought and prosecuted individually, the claims of the members of the class would require proof of the same material and substantive facts.

- The pursuit of separate actions by individual members of the class would, as a practical matter, be dispositive of the interests of other members of the class, and could substantially impair or impede their ability to protect their interests.

- The pursuit of separate actions by individual members of the class could create a risk of inconsistent or varying adjudications, which might establish incompatible standards of conduct for Defendant.

- These varying adjudications and incompatible standards of conduct, in connection with presentation of the same essential facts, proof, and legal theories, could also create and allow the existence of inconsistent and incompatible rights within the class.

- The damages suffered by each individual member of the class may be relatively modest, thus, the expense and burden to litigate each of their claims individually make it difficult for the members of the class to redress the wrongs done to them.

- Absent a class action, most Class Members would likely find the cost of litigating their claims prohibitively high and would therefore have no effective remedy at law.

- The pursuit of Plaintiff's claims, and the claims of the members of the class, in one forum will achieve efficiency and promote judicial economy.

- There will be little difficulty in the management of this action as a class action.

119.   Defendant has acted or refused to act on grounds generally applicable to the members of the class, making final declaratory or injunctive relief appropriate.

120.   Plaintiff and the members of the Class have all suffered irreparable harm as a result of the Defendant's unlawful and wrongful conduct.  Absent a class action,

the Class will continue to face the potential for irreparable harm. In addition, these violations of law will be allowed to proceed without remedy and Defendant will likely continue such illegal conduct. Because of the size of the individual Class member's claims, few, if any, Class members could afford to seek legal redress for the wrongs complained of herein.

121. A class action is a superior method for the fair and efficient adjudication of this controversy. Class-wide damages are essential to induce Defendant to comply with federal law. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the maximum statutory damages in an individual action for violation of privacy are minimal. Management of these claims is likely to present significantly fewer difficulties than those presented in many class claims.

122. Plaintiff and the Class Members have all suffered and will continue to suffer harm and damages as a result of Defendant's unlawful conduct.

123. This suit seeks only damages and injunctive relief for recovery of economic injury on behalf of Class Members and it expressly is not intended to request any recovery for personal injury and claims related thereto.

## COUNT I

### VIOLATIONS OF THE TELEPHONE CONSUMER PROTECTION ACT
### REGARDING THE NATIONAL DO-NOT CALL REGISTRY
### 47 U.S.C. § 227(C) AND 47 C.F.R. § 64.1200(C)

124. Plaintiff re-alleges and incorporates by reference each preceding paragraph as though fully set forth herein.

125. Plaintiff and members of the National DNC Class received more than one marketing text message or phone call within a 12-month period, sent by or on behalf of Defendant, for the express purpose of marketing Defendant's goods and/or services without their written prior express consent.

126. At all relevant times, Defendant knew or should have known that its

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

conduct as alleged herein violated the TCPA.

127.    Defendant sent at least two unsolicited and unauthorized text messages and/or phone calls to the cellular telephones of Plaintiff and the Class members, cellular telephones which were registered with the National Do-Not Call Registry, for the purpose of marketing goods and/or services to Plaintiff and the Class.

128.    Defendant knew that it did not have prior express written consent to send these text messages and/or phone calls, and knew or should have known that it was sending text messages or making calls to cellular numbers on the National Do-Not Call Registry in violation of the TCPA.

129.    Defendant willfully or knowingly allowed text messages and/or phone calls to be sent to Plaintiff's and Class members' cellular telephone numbers on the National Do-Not Call Registry. For instance, Defendant could have determined from a review of its own business records and the National Do-Not Call Registry that it could not contact Plaintiff and/or Class members, yet disregarded such information and placed illegal and unwanted solicitation text messages and calls.

130.    Defendant's text messages and/or calls caused Plaintiff and members of the National DNC Class actual harms including, but not limited to, invasion of their personal privacy, aggravation, inconvenience, nuisance and disruption in their daily lives, reduction in cellular telephone battery life, data, and loss of use of their cellular telephones.

131.    Because Defendant knew or should have known that Plaintiff's and Class Members' cellular telephone numbers were on the National Do-Not Call Registry, the Court should treble the amount of statutory damages available to Plaintiff and the other members of the putative Class pursuant to § 227(c)(5) of the TCPA.

132.    As a result of Defendant' violations, Plaintiff and the Class Members are entitled to an award of $1,500.00 in statutory damages, for each and every willful or knowing violation, pursuant to 47 U.S.C. § 227(c)(5)(C) or in the alternative an award of $500.00 in statutory damages, for each and every negligent violation, pursuant to 47

U.S.C. § 227(c)(5)(B).

133.   Plaintiff and the Class are also entitled to and seek injunctive relief, pursuant to 47 U.S.C. § 227(c)(5)(A), prohibiting such conduct in the future.

134.   Plaintiff also seeks an award of attorneys' fees and costs on behalf of Plaintiff and the Class.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the Class, respectfully requests the following relief:

- An order certifying this matter as a class action with Plaintiff as Class Representative, and designating Plaintiff's counsel as Class Counsel.

- Injunctive relief prohibiting Defendant from engaging in such conduct in the future pursuant to 47 U.S.C. § 227(c)(5)(A);

- Statutory damages of $500.00 for Plaintiff and each member the Class for each and every one of Defendant's negligent violations of 47 U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(B);

- Statutory damages of $1,500.00 for Plaintiff and each member the Class for each and every one of Defendant' knowing or willful violations of 47 U.S.C. §§ 227, *et seq*. pursuant to 47 U.S.C. § 227(c)(5)(C);

- Costs of suit;

- An award of attorneys' fees, pursuant to, *inter alia*, the common fund doctrine;

- Pre-judgment and post-judgment interest on monetary relief; and

- All other and further relief as the Court deems necessary, just, and proper.

## DEMAND FOR JURY TRIAL

Plaintiff, individually and on behalf of the Class, demands a jury trial on all issues so triable.

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

1

2      Dated: March 25, 2025                    Respectfully submitted,

3
                                               **MADAR LAW CORPORATION**
4

5

6                                              By: /s/Alex S. Madar
                                               Alex S. Madar, Esq.
7                                              alex@madarlaw.net
                                               *Attorneys for Plaintiff*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF